IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ANNE MARIE LAWHORN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 7:14-CV-454 |
| | ) |
| CAROLYN COLVIN, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## REPORT AND RECOMMENDATION

Plaintiff Anne Marie Lawhorn ("Lawhorn") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") determining that she was not disabled and therefore not eligible for supplemental security income ("SSI") under the Social Security Act ("Act"). 42 U.S.C. §§ 1381–1383f. Specifically, Lawhorn alleges that the Administrative Law Judge ("ALJ") erred by (1) failing to properly consider Lawhorn's mental impairments under SSR 96-8p, by (2) failing to properly analyze the impact of Lawhorn's psychotic symptoms on her RFC, and (3) that the ALJ's credibility assessment of Lawhorn is not supported by substantial evidence.

This court has jurisdiction pursuant to 42 U.S.C. § 1383(c)(3). This case is before me by referral pursuant to 28 U.S.C. § 636(b)(1)(B). The parties have fully briefed and argued all issues, and the case is ripe for decision. I have carefully reviewed the administrative record, the legal memoranda, the arguments of counsel, and the applicable law. I conclude that the ALJ's conclusions regarding Lawhorn's credibility were flawed and lacked substantial evidence to support them. The credibility determination regarding Lawhorn's reported mental limitations is a

1

key factor in this case. Finding that it was flawed necessarily undercuts the ALJ's other conclusions contested by Lawhorn, namely that the ALJ improperly considered her mental impairments under SSR 96-8p and that he failed to properly analyze the impact of these symptoms on her RFC. Accordingly, I **RECOMMEND GRANTING IN PART** Lawhorn's Motion for Summary Judgment (Dkt. No. 14), and **DENYING IN PART** the Commissioner's Motion for Summary Judgment (Dkt. No. 16) and recommend remanding this case for further review.

## STANDARD OF REVIEW

Section 405(g) of Title 42 of the United States Code authorizes judicial review of the Commissioner's denial of social security benefits. Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Lawhorn failed to demonstrate that she was disabled under the Act. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

Lawhorn bears the burden of proving that she is disabled within the meaning of the Act. English v. Shalala, 10 F.3d 1080, 1082 (4th Cir. 1993) (citing 42 U.S.C. § 423(d)(5)). The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12

months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments keep her from engaging in any and all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. § 423(d)(2).

The Commissioner uses a five-step process to evaluate a disability claim. Walls v. Barnhart, 296 F.3d 287, 290 (4th Cir. 2002). The Commissioner asks, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment;[1] (4) can return to her past relevant work; and if not, (5) whether she can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R. § 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. The burden shifts to the Commissioner at the fifth step to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## SOCIAL AND VOCATIONAL HISTORY

Lawhorn was born in 1973(Administrative Record, hereinafter "R." at 151), and was classified as a younger individual on her alleged onset date. Id.; 20 C.F.R. § 416.963. Lawhorn completed the ninth grade (R. 173) and later obtained her GED. R. 30. Lawhorn previously

---

[1] A "listed impairment" is one considered by the Social Security Administration "to be severe enough to prevent an individual from doing any gainful activity, regardless of her or her age, education, or work experience." 20 C.F.R. § 404.1525(a).

3

cared for her older family members, cleaned houses, and worked as a CNA. R. 32–33. Lawhorn has not worked since November 10, 2010 and reported that her last job was caring for her grandmother, grandfather, and mother. R. 31. Lawhorn reported at the hearing that she can no longer work because of depression with psychosis. R. 34–35. Her medical records show two hospitalizations for mental health issues – one in November of 2010 (R. 249–70) and another in December of 2010. R. 275–302. In March of 2011, Lawhorn reported on a Function Report questionnaire that she had the capacity to use the restroom on her own, get dressed, go to appointments, work out, cook, eat, bathe, sleep, read, and make jewelry. R. 192. She was able to prepare food or meals "about daily" and was able to do basic household chores (like sweeping, mopping, dusting, and washing dishes and clothes); Lawhorn stated that she went outside "everyday." R. 194–95. She reported that she went to the "Y" three times per week and to the Blue Ridge Burrell Center several times per month. R. 196. In June of 2011 in response to an identical questionnaire, Lawhorn reported that she "usually" found it hard to get motivated, had "no energy", had not prepared a meal "in a while", was able to do "some laundry", and reported that she went "no where" [sic] on a regular basis. R. 211–17.

## CLAIM HISTORY

Lawhorn filed for SSI on December 28, 2010 (R. 149), claiming that her disability began on November 10, 2010. R. 151. The Commissioner denied the application at the initial and reconsideration levels of administrative review. R. 83, 91. On November 20, 2012, ALJ Benjamin R. McMillion held a hearing to consider Lawhorn's disability claim. R. 26–52. Lawhorn was represented by an attorney, Amy Geddes, at the hearing, which included testimony from Lawhorn and vocational expert Ruth Fast. R. 26.

4

On December 12, 2012, the ALJ entered his decision denying Lawhorn's claims. R. 9–21. The ALJ found that Lawhorn suffered from the severe impairments of chronic knee pain, chronic back pain, depression, psychotic symptoms, and a history of alcohol and drug dependence. R.14. The ALJ found that these impairments, either individually or in combination, did not meet or medically equal a listed impairment. Id. The ALJ also found that Lawhorn retained the RFC to perform medium work, but that she was not able to crawl, climb ladders, ropes, or scaffolds and that she was limited to one to two step job instructions. R. 18. The ALJ determined that Lawhorn could return to her past relevant work as a cashier and house cleaner (R.20), and that Lawhorn could work at other jobs that exist in significant numbers in the national economy, namely: packager, janitor, and marker. R. 20–21. Thus, the ALJ concluded that she was not disabled. Id. On July 1, 2014, the Appeals Council denied Lawhorn's request for review (R. 1), and this appeal followed.

## ANALYSIS

Lawhorn contends that the ALJ erred by (1) failing to properly consider Lawhorn's mental impairments under SSR 96-8p, by (2) failing to properly analyze the impact of Lawhorn's psychotic symptoms on her RFC, and (3) that the ALJ's credibility assessment of Lawhorn is not supported by substantial evidence.

### Credibility

Lawhorn argues that the ALJ's conclusions about her credibility were not supported by substantial evidence. A determination of the issues Lawhorn raises regarding her credibility and mental limitations is the key to determining the other errors Lawhorn presents, and thus, are addressed at the outset.

Credibility determinations are emphatically the province of the ALJ, not the court, and courts normally should not interfere with these determinations. See, e.g., Chafin v. Shalala, No. 92–1847, 1993 WL 329980, at *2 (4th Cir. Aug. 31, 1993) (per curiam) (citing Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) and Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964)); Melvin v. Astrue, 6:06 CV 00032, 2007 WL 1960600, at *1 (W.D. Va. July 5, 2007) (citing Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989)). It is part of the ALJ's prerogative as a fact finder to consider the evidence as a whole in determining a claimant's credibility. "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, SSR 96-7P (S.S.A. July 2, 1996). Where the ALJ's credibility determination is supported by substantial evidence, it should not be disturbed. See Johnson v. Barnhart, 434 F.3d 650, 658–59 (4th Cir. 2005) (per curiam) (citing Craig, 76 F.3d at 589).

Where the ALJ fails to "explain how he decided which [of a claimant's] statements to believe and which to discredit, other than the vague (and circular) boilerplate statement that he did not believe any claims of limitations beyond what he found when considering [the claimant's] residual function capacity" then the case should be remanded. Mascio v. Colvin, 780 F.3d 632, 640 (4th Cir. 2015). In this case, as in Mascio, the ALJ wrote "the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with

6

the above residual functional capacity." R. 18–19. This boilerplate language is the same language the Fourth Circuit addressed in Mascio. This analysis "gets things backwards" by first determining a claimant's RFC and then using the RFC to determine the claimant's credibility. Mascio, 780 F.3d, at 639. This process conflicts with the Social Security Agency's own regulations, which require an ALJ to "determine the extent to which [the claimant's] alleged functional limitations and restrictions . . . can reasonably be accepted as consistent with the medical signs and laboratory findings and other evidence" to determine how a person's symptoms affect her ability to work. Id.; 20 C.F.R. § 416.929(a). Use of this boilerplate language "would be harmless if [the ALJ] properly analyzed credibility elsewhere." Mascio, 780 F.3d, at 639.

Here, the ALJ cited the activities Lawhorn reported in her Adult Function Report dated March 1, 2011 (R. 192–99) in support of his conclusions that she lacked credibility in her reports of her mental limitations. The ALJ noted that Lawhorn could read, write, talk on the phone, use a computer keyboard, wash dishes, make snacks, do laundry, and take care of her personal needs. R. 19. In the March report, Lawhorn stated that she could take her medications, get dressed, go to her appointments, cook, eat, bathe, make jewelry, and sleep. R. 192. She also stated she could prepare food or meals daily, could perform household chores (R. 194) and that she could go to the "Y" and the Blue Ridge Burrell Center. R. 196. However, she also reported at this time that she needed to be reminded of her appointments and that a "Blue Ridge worker" accompanied her to the Y. R. 196. She also reported that she did not handle stress or changes in her routine well and that she had trouble with her memory, concentration, and understanding, and with completing tasks and getting along with others. R. 197.

In making his conclusory determination that Lawhorn was not credible, the ALJ failed to address a second Adult Function Report dated June 7, 2011. R. 211–18. Though the reports asked the same questions, Lawhorn answered the questions very differently, painting two very different pictures of her home life and her abilities. In contrast to the March report, Lawhorn stated in June that she had "no energy" (R. 211), had not made a full meal "in a while" (R. 212), that she was not able to care for anyone else (R. 213), and that her "motivation is hardly there." R. 214. She also reported that she went "no where [sic]" on a regular basis and that she needed reminders to go out and needed someone to accompany her. R. 217.

Additionally, during her hearing testimony, Lawhorn reported that she could manage a checking account if she had one (R. 31), but that she could no longer exercise because of her physical difficulties. R. 39. She was able to do some household chores (R. 39–40), but she also stated that she had panic attacks "almost every morning" (R. 43) and that she had stopped making jewelry and relied upon her aunt to make sure she was able to occasionally leave her home. R. 42.

The ALJ clearly believed some of Lawhorn's statements about her abilities because he relied exclusively upon the March function report in forming his opinion about her mental and social abilities. See R. 19. However, the ALJ gives no explanation that would allow this court to review the determination that Lawhorn's claims about her mental limitations were not credible. There is no mention of Lawhorn's demeanor at the hearing and whether that impacted her credibility. The ALJ does not acknowledge the contradictory self-reports Lawhorn gave in response to the questionnaires or her hearing testimony. The ALJ does not compare Lawhorn's alleged mental limitations with her extensive records of inpatient and outpatient mental health treatment or point to any objective findings in those records to support his conclusion that

8

Lawhorn was exaggerating her mental symptoms.[2] In sum, there is almost nothing other than the improper boilerplate language to support the ALJ's credibility determination. This determination is "not sufficiently specific to make clear . . . the weight the adjudicator gave" to Lawhorn's statements. SSR 96-7p. This lack of specificity and explanation means that this error is not harmless, and the case should be remanded. Mascio, 780 F.3d, at 639.

All of the potential errors raised in this case hinge upon the ALJ's determination of Lawhorn's mental abilities. The lack of support for the ALJ's conclusions regarding credibility calls into question the true extent and impact of her mental abilities in relation to her other alleged errors. Without a valid credibility determination to use in evaluating the limitations Lawhorn claims she has, this court cannot evaluate whether the ALJ erred in his conclusions regarding the impact of those impairments on the RFC or whether the questions posed to the VE properly accounted for Lawhorn's limitations. Therefore, I recommend that the case should be remanded for further consideration by the ALJ.[3]

## CONCLUSION

Given the findings set forth above, I recommend that the Commissioner's decision be reversed, the plaintiff's motion for summary judgment be **GRANTED IN PART**, and the

---

[2] Lawhorn has an extensive mental health treatment record that includes both inpatient and outpatient care. On November 9, 2010, she was admitted to Carilion Clinic Rehab for bizarre behavior and reported hallucinations. R.307–11. She stayed in the hospital for nine days. She was admitted again for mental health issues on a temporary detention order from December 12, 2010 until December 22, 2010 (R. 389–95) due to depression, psychosis, and substance abuse and again from November 15, 2011 until November 21, 2011 when her boyfriend took her to the emergency room after observing her strange and dangerous behavior. R. 689–703. She has also participated in numerous outpatient mental health treatment sessions at Blue Ridge Behavioral Health. See, e.g., R. 549–602; 603–685. The ALJ's failure to address these records in his credibility analysis calls into question his conclusions on that issue as well as his conclusions on Lawhorn's mental limitations. Thus I recommend that remand is appropriate to allow the ALJ to further consider these records.

[3] Lawhorn also assigns error to (1) the ALJ's failure to properly consider her mental impairments under SSR 96-8p and (2) the ALJ's improper analysis of her psychotic symptoms on her RFC. Once the credibility issue has been resolved and the true extent of her mental limitations can be determined, I recommend that these areas should be revisited by the ALJ as well.

Commissioner's motion for summary judgment be **DENIED INPART** and that the case should be remanded to the ALJ for further consideration.

The Clerk is directed to transmit the record in this case to Glen E. Conrad, Chief United States District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objection.

Entered: February 1, 2016

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge